UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Angel Pullum,<br>    Plaintiff,<br><br>v.<br><br>Southeast Alabama Community<br>Action Partnership, Inc.<br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br><br>Civil Action No.: 1:18-cv-750<br><br>JURY DEMAND |

## COMPLAINT

### INTRODUCTION

1. This is an action for redress of unlawful retaliation committed by the Defendant in violation of the Bill to Enhance Whistleblower Protection for Contractor and Grantee Employees, 41 U.S.C. 4712, as amended. The Plaintiff requests a trial by jury of all issues so triable to a jury.

### JURISDICTION

2. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §1331 and 41 U.S.C. 4712 (c)(2).

3. The Defendant, Southeast Alabama Community Action Partnership, Inc. ("Defendant" or "SEACAP") employed the Plaintiff in Coffee County, Alabama where the events giving rise to the Plaintiff's claim occurred. Therefore, venue in the Middle District of Alabama is proper pursuant to 28 U.S.C. §1391.

### PARTIES

4. SEACAP, which until 2016 was known as the Human Resource Development Corporation ("HRDC"), is a grantee on a number of federal grants including the following:

- The Low Income Home Energy Assistance Program (LIHEAP) administered by the U.S. Department of Health and Human Services;
- The Community Service Block Grant Program also administered by the U.S. Department of Health and Human Services;
- The Child and Adult Nutrition Program administered by the U.S. Department of Agriculture

The Defendant is, therefore, a federal grantee for purposes of 41 U.S.C. 4712.

5. At all relevant times herein, the Plaintiff was over age 19 and a resident of Geneva County, Alabama. As an employee of a federal grantee, she is entitled to the protections of 41 U.S.C. 4712.

## STATEMENT OF FACTS

6. Ms. Pullum worked for the Defendant from November 2009 until October 2017. During this time, she enhanced her education and work credentials. She was initially hired at SEACAP as a Community Coordinator. While working full time, she attended Troy University and received her Bachelor of Science in Business Administration with a concentration in Human Resource Management in 2012. She then began coursework toward her Master's Degree in Human Resource Management. In May 2012, she was promoted to the position of Communications Officer and, in July 2014, she was promoted to the position of Director of Human Resources.

7. During this time, Plaintiff's performance evaluations were very favorable, and, until October 2017, Ms. Pullum was never the subject of any disciplinary action.

8. Ms. Karinne Simmons was hired as the CEO of SEACAP in July 2014, and she was Ms. Pullum's supervisor at all times relevant to this lawsuit

9.  SEACAP had a whistleblower policy in place for many years as part of its Board Policy Manual. The whistleblower policy placed an affirmative duty on employees to report suspected violations. The policy stated in part:

> "As employees and representatives of the Organization, HRDC's directors, officers and employees must practice honesty and integrity in fulfilling our responsibilities and comply with all applicable laws and regulations.
>
> "It is the responsibility of all directors, officers, and employees to comply with the [Ethics] Code and to report violations or suspected violations in accordance with this Whistleblower Policy." (2010 Board Resolution Amending Board Policy Manual).

10.  The whistleblower policy also protected employees from retaliation:

> **"No Retaliation**
> "No director, officer or employee who in good faith reports a violation of the Code shall suffer harassment, retaliation or adverse employment consequence. An employee who retaliates against someone who has reported a violation in good faith is subject to discipline up to and including termination of employment. This Whistleblower Policy is intended to encourage and enable employees and others to raise serious concerns within the Organization prior to seeking resolution outside of the Organization.
>
> **"Reporting Violations**
> "…In most cases, an employee's supervisor is in the best position to address an area of concern. However, if you are not comfortable speaking with your supervisor or you are not satisfied with your supervisor's response, you are encouraged to speak with anyone in management whom you are comfortable approaching. …"

11.  Legal protection for whistleblowers on federal grants was enacted through a temporary statute introduced in 2013 as a pilot program. It extended whistleblower protection to employees of federal grantees and gave those employees the right to disclose information which the employee reasonably believes to be evidence of gross mismanagement of a federal grant, gross waste of federal funds, an abuse of authority, or a violation of law to

3

management officials. 41 USC 4712(a)(1). The rights afforded to employees under §4712 cannot be waived by any other "agreement, policy, form, or condition of employment." 41 USC 4712(c)(7). Further, the act requires that employees of grantees be informed in writing of the rights and remedies provided by Section 4712. 41 USC 4712(d).

12. In 2016, the pilot program was determined to be a success and was made permanent. At the time, Congressional sponsors stated that, "Whistleblowers are invaluable to the oversight work of Congress. …They are one of the best sources of information about waste, fraud and abuse within the Federal Government … With this bill, we are sending a strong message to both whistleblowers and their employers. We are serious about stopping waste, fraud and abuse, and we are serious about protecting those who bring that information forward… As we work to protect taxpayer dollars, we also have a duty and responsibility to protect these whistleblowers. These are the best allies we have…They risk their careers to challenge abuses of power and mismanagement of government resources. They must be protected against retaliation when they blow the whistle on wrongdoing." 162 Cong Rec H 7147-7148.

13. Beginning in February 2017 and continuing thereafter, Ms. Pullum began to report her concerns about the conduct of the CEO to members of the SEACAP board. Among other things, these disclosures included the following:
   a. That there had been a significant reduction in the balances maintained in SEACAP's accounts compared to previous years as seen in the annual IRS form 990 reports;
   b. That there were funds due back to grantors which were spent for operational purposes;
   c. That the CEO spent down the organization's accounts and had been wasteful with SEACAP resources;

    d. That the CEO incurred significant travel expenses including a trip with another employee to Puerto Rico for a Head Start Conference when SEACAP does not have a Head Start program, and none are available;

    e. That the CEO drew a salary while on leave for a number of weeks and did not use PTO;

    f. That the CEO hired her sister-in-law in violation of the anti-nepotism policy; and

    g. That the CEO retaliated against several employees for raising concerns about her conduct. These acts of retaliation included:

        i. The termination of the Accounting Manager in April 2017 for voicing concerns regarding the organization's finances and for suggesting that a Finance Committee meeting be called;

        ii. The termination of Michelle Glaze on October 6, 2017 for reporting her concerns to the Board; and

        iii. The loss of Marisa Williams who had also voiced concerns about the CEO and who quit under pressure.

14. With these disclosures, Plaintiff became a whistleblower and was entitled to the protections established in Section 4712. SEACAP, however, failed to protect Ms. Pullum from retaliation by the CEO. To wit:

    a. On Monday, October 16, 2017, the CEO gave Ms. Pullum a letter of suspension because Ms. Pullum had communicated directly with Board Members.

    b. A week later, on Monday, October 23, 2017, the CEO mailed the Plaintiff a letter terminating her employment, again, specifically for communicating her complaints to the Board.

    c. The CEO then sought to have Ms. Pullum arrested on a frivolous misdemeanor charge of deleting computer files. There was no probable cause or basis for bringing such a charge except as a continuing act of retaliation.

15. Ms. Pullum immediately notified the Board of the retaliation which the CEO had committed, but the Board failed to take any action:

      a.      Plaintiff joined a grievance with Michelle Glaze, Marisa Williams, and Brandy Holland which was mailed to the Board on October 24, 2017. The Board did not respond to this grievance.

      b.      Upon retaining counsel, Ms. Pullum, filed a second grievance with the Board by letter dated November 9, 2017, protesting the retaliation. Again, the Board did not respond and they took no action to rectify the retaliation which had taken place.

## ADMINISTRATIVE PREREQUISITES

16      Therefore, by letters dated December 14, 2017, and pursuant to 41 U.S.C. 4712, Ms. Pullum filed complaints concerning the above misconduct and retaliation with the Offices of the Inspector General for the U.S. Department of Health and Human Services and the U.S. Department of Agriculture.

17.      More than 210 days have elapsed since the filing of the OIG complaints. The Plaintiff has therefore exhausted her administrative remedies under 41 USC 41712 (c)(2) and may now proceed with this de novo action.

## COUNT I
## RETALIATION UNDER 41 USC 4712

18.      The Plaintiff realleges and incorporates Paragraphs 1 through 17 by reference herein.

19.      SEACAP violated 41 U.S.C. §4712 by suspending, discharging, and otherwise discriminating against the Plaintiff as a reprisal for disclosing information to Board members which she reasonably believed to be evidence of gross mismanagement of federal grants,

gross waste of federal funds, an abuse of authority relating to said grants as well as violations of federal law and regulations.

20. Further, when apprised of the retaliation, the Board failed to act in order to restore the Plaintiff to her former position.

21. SEACAP committed additional administrative violations of Section 4712 by:

a. Including a policy in the handbook which prohibited employees from speaking with Board members; and

b. Failing to notify employees in writing of their rights under Section 4712 as required by 41 U.S.C. 4712(d).

22. As the proximate result of the foregoing acts and omissions of the Defendant, the Plaintiff has suffered damages including, but not limited to lost wages, benefits, and other compensation which was denied her by reason of the violation, together with the interest, attorney's fees, and other costs of the action to be paid by the Defendant and all other damages allowed by law.

WHEREFORE, the Plaintiff prays that judgment be entered in her favor and against the Defendant herein for all such damages allowed by law.

## EQUITABLE PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, in addition to the above claimed legal remedies also prays for a declaratory judgment holding that the actions of the Defendant, described above, violated, and continue to violate, the rights of the Plaintiff as secured by federal law and that a permanent injunction enjoining the Defendant, its agents, affiliates, successors, employees,

7

attorneys and those acting in concert with the Defendant and on the Defendant's behalf from continuing to violate such laws and for such other and equitable relief as appropriate.

Respectfully submitted this 21 day of August 2018.

*Elizabeth Glasgow*
Elizabeth B. Glasgow (ASB-8348-S58E)
Ashton Ott (ASB-7085-E58A)
Farmer, Price, Hornsby & Weatherford, L.L.P.
100 Adris Place (36303)
Post Office Drawer 2228
Dothan, Alabama 36302
Tel:  334/793-2424
Fax:  334/793-6624

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE TO A JURY.**

*Elizabeth Glasgow*
Elizabeth B. Glasgow

**SERVE DEFENDANT AT:**
Southeast Alabama Community Action Partnership, Inc.
100 George Wallace Drive
Enterprise, Alabama 36330

Courtesy copy to:
Mr. Jeffery Hatcher
300 S. Commerce Street
Geneva, Alabama 36340